UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-680-MOC

| SARAH PLEMMONS, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) **ORDER** |
| KILOLO KIJAKAZI,<br>Acting Commissioner of<br>Social Security, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 10, 13). Plaintiff Sarah Plemmons brought this action, pursuant to 42 U.S.C. § 405(g), for review of Defendant's final decision that Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

### FINDINGS AND CONCLUSIONS

#### I. Administrative History

On February 6, 2019, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning May 20, 2018. (Tr. 10, 244–53). The State agency denied Plaintiff's applications initially and upon reconsideration. (Tr. 83–160). An ALJ held a hearing on January 4, 2021, in response to Plaintiff's written request. (Tr. 10, 43–82). Plaintiff, her father (Jeffrey Plemmons), her non-attorney representative, and an impartial vocational expert (VE) appeared at the hearing. (Tr. 43). On March 2, 2021, the ALJ decided Plaintiff was not disabled under the Act. (Tr. 10–24). The Appeals Council denied Plaintiff's

request for review. (Tr. 1–6). Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II. Factual Background

The Court finds that the ALJ's findings of fact are supported by substantial evidence and therefore adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

### a. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether the Court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

### b. Sequential Evaluation

For the purposes of Title II of the Act, "disability" means "the inability to do any substantial gainful activity [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

   a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

   b. An individual who does not have a "severe impairment" will not be found to be disabled;

   c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix

1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)–(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### c. The Administrative Decision

The ALJ followed the five-step sequential evaluation in the analysis of Plaintiff's alleged disability. See 20 C.F.R. § 416.920(a). Applying the five-step sequential evaluation process, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity (SGA) since her alleged onset date (Tr. 12–13); (2) had the severe impairments of DiGeorge syndrome[1] with congenital anomalies of the heart, anxiety, depression, and learning disorder (Tr. 13); and (3) did not have an impairment or combination of impairments that met or medically equaled a listed

---

[1] DiGeorge syndrome "is a disorder caused when a small part of chromosome 22 is missing. This deletion results in the poor development of several body systems." DiGeorge syndrome (22q11.2 deletion syndrome), Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/digeorgesyndrome/symptoms-causes/syc-20353543, (last visited July 6, 2022).

impairment (Tr. 14–16). Before proceeding to step four, the ALJ determined, in part, Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk, with normal breaks, for a total of 6 hours in an 8-hour workday and sit, with normal breaks, for a total of 6 hours in an 8-hour workday . . . The claimant should avoid all exposure to unprotected heights and moving, unguarded machinery. She can understand, remember and carry out simple instructions and tasks; and she can maintain attention and concentration to simple tasks for 2-hour periods to complete an 8-hour workday and 40-hour workweek. The claimant can occasionally interact with coworkers, supervisors and the general public; and she can adapt to routine and simple changes in the work environment.

(Tr. 16). The ALJ found that (4) Plaintiff could not perform her past relevant work (Tr. 22); and (5) there were other jobs existing in significant numbers in the national economy that Plaintiff could perform based on her age, education, work experience, and RFC. (Tr. 22–23).

### V. Discussion

Plaintiff asserts that the ALJ's RFC analysis was improper because the ALJ found the opinions of Drs. Schwartz, Shahan, and McNulty unpersuasive, but "did not adequately explain how she considered [] evidence" supporting these opinions. (Doc. No. 11 at 4–18).

**A. In considering the opinion evidence, the ALJ thoroughly evaluated Plaintiff's symptoms and the objective medical evidence.**

As an initial matter, for claims filed on or after March 27, 2017—such as Plaintiff's claim here—regulations 20 C.F.R. §§ 404.1520c, 416.920c apply. The regulations explain the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). While the ALJ must articulate how she considered the medical opinions, there are no particularized procedures that the ALJ must follow in considering opinions from treating sources (e.g., requirement that

-5-

adjudicators must "give good reasons" for the weight given a treating source opinion). Compare 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) with 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017). Rather, the ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) while considering five regulatory factors. See 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c).

Of the five factors, the ALJ must explain how she considered the factors of supportability and consistency, which are the two most important factors in determining persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And, as this Court recently held, even where "the ALJ's analysis could be more descriptive," the court may find it sufficient to address the consistency and supportability factors. Hillman v. Kijakazi, No. 1:20-CV-00237-MOC, 2021 WL 3824685, at *6 (W.D.N.C. Aug. 26, 2021).

Plaintiff contends that the ALJ failed to properly evaluate evidence supporting three of the medical source opinions. (Pl. Br. 4–21). But underlying this argument is that the ALJ did not properly account for her symptoms or the objective medical evidence in assessing the RFC. Contrary to Plaintiff's contention, applying the two-step process for evaluating symptoms, the ALJ described how she considered evidence in the record, including the medical source opinions and objective findings, to assess how Plaintiff's symptoms limited her ability to perform work related activities. (Tr. 14–21). SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause [Plaintiff's] alleged symptoms; however . . . these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. 21). SSR 16-3p.

**1. The ALJ's evaluation of Dr. Schwartz's opinion.**

Plaintiff first argues that the ALJ "did not acknowledge [her] cardiac abnormalities and

-6-

Case 3:21-cv-00680-MOC   Document 17   Filed 08/31/22   Page 6 of 18

complex congenital heart disease in evaluating the persuasiveness of Matthew Schwartz, M.D.'s opinion." (Doc. No. 11 at 6). But in contrast, in considering the limiting effects of Plaintiff's DiGeorge syndrome with congenital anomalies of the heart and assessing Plaintiff's physical RFC, the ALJ described how she considered Plaintiff's reports alongside the medical evidence showing improved pulmonary functions and symptoms in determining Plaintiff's ability to meet the requirements of light exertional work. 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p, 1996 WL 374184 (July 2, 1996).

      The ALJ acknowledged that Plaintiff's impairment resulted in limiting symptoms and noted that Plaintiff testified that she experiences shortness of breath with exertion and is only able to walk three houses down her block and climb one flight of stairs. (Tr. 17, 58–59). And contrary to Plaintiff's assertion, the ALJ discussed specific evidence from Plaintiff's EKG that indicated some evidence of abnormal heart functioning. For example, the ALJ observed that before Plaintiff's alleged onset date, an EKG from June 2017 revealed findings consistent with elevated right ventricle systolic pressure, moderate tricuspid regurgitation, a mildly dilated right ventricle with mildly reduced systolic function, mildly depressed systolic function with an ejection fraction of 50 percent, moderate dilation of the aortic root, and mild aortic valve insufficiency. (Tr. 17, 490). The ALJ stated that based on these results, Plaintiff's cardiologist Dr. Schwartz recommended delaying a thyroidectomy. (Tr. 17, 534). However, as the ALJ explained, the objective evidence showed that Plaintiff's cardiovascular condition improved. Also, later that month, despite findings from a heart catherization showing trivial obstruction, elevated diastolic pressure, and abnormal vasculature, Dr. Schwartz determined that her cardiac output was normal and cleared her for surgery. (Tr. 18, 545). Moreover, nine months later, in

April 2018, the cardiologist assessed that Plaintiff was doing clinically well, and he encouraged her to increase her aerobic exercise. (Tr. 18, 545).

Plaintiff subsequently underwent two additional EKGs in October 2018 and again in September 2019. (Tr. 18). While the October 2018 EKG was substantially similar to the June 2017 EKG, there were several noticeable differences. The ALJ observed that the latter EKG now showed mild conduit insufficiency, mild to moderate tricuspid regurgitation instead of moderate tricuspid regurgitation, and Plaintiff's ejection fraction had increased from 50 percent to 59 percent. (Tr. 18, compare 490 with 497). Likewise, Plaintiff's September 2019 EKG also showed some evidence of improvement compared to her prior EKGs and her ejection fraction now measured 61 percent. (Tr. 18, compare 792 with 490 and 497). As the ALJ explained, although Plaintiff reported experiencing mild fatigue with exertion during her November 2020 physical examination with Dr. Schwartz and the cardiologist noted that she had 3/6 low frequency systolic murmur and 2/4 low frequency diastolic murmur, the remainder of her physical examination was unremarkable, with findings consistent with a normal precordium and regular rate and rhythm in her heart. (Tr. 18, 918). Additionally, while Plaintiff testified that she experiences shortness of breath with exertion and can only walk three houses down her block and climb one flight of stairs, this cardiac examination revealed that there was no evidence of increased work of breathing and she had clear bilateral breath sounds. (Tr. 17, 58–59, 918).

In assessing Plaintiff's functional limitations, the ALJ considered Dr. Schwartz's November 2020 statement that Plaintiff had a prosthetic connection between her heart and lungs that had a moderate obstruction and regurgitation. (Tr. 18, 916–17). Dr. Schwartz opined that Plaintiff had exertional limitations caused by her congenital heart disease, and the combination of her developmental delay and psychiatric disorders would make it challenging for her to

maintain employment and live independently. (Tr. 18–19, 916–17). The following month, in December 2020, Dr. Schwartz stated that Plaintiff's fatigue and shortness of breath caused by her congenital heart disease limits her ability to work and she would be unable to sit 6 hours in an 8-hour workday, stand or walk 2 hours in an 8-hour workday, lift 10 pounds up to 2 hours, grasp objects more than 2 hours, or reach more than 2 hours in an 8-hour workday. (Tr. 18, 943). Dr. Schwartz added that Plaintiff would need to alternate sitting and standing more than twice an hour, would need to lie down during the workday, and would be absent more than one day per month. (Tr. 18, 943).

The ALJ ultimately determined that both opinions were not persuasive. (Tr. 18–19). She explained that Dr. Schwartz's normal physical examination findings, his repeated encouragement for Plaintiff to exercise, and his treatment notes did not support his assessed limitations. (Tr. 18, 489–90, 506–07, 536–37, 698, 792, 918). See Clark v. Colvin, No. 5:13-cv-00157-GCM, 2014 WL 7005366, at *4 (W.D.N.C. Dec. 11, 2014) (ALJ properly discounted an opinion in part because the physician's own notes did not support it). Notably, when Dr. Schwartz stated that the combination of Plaintiff's impairments would make it difficult for her to maintain work, he also stated that she was "doing relative well" and only had "mild fatigue with exertion." (Tr. 917). The ALJ also explained that Dr. Schwartz's opinions were inconsistent with Plaintiff's echocardiogram findings and with other evidence in the record showing that she exhibited normal strength, sensation, and tone. (Tr. 18, 497, 616, 792, 801). Moreover, as the ALJ indicated, Dr. Schwartz's statement that Plaintiff's impairments would make it challenging for her to maintain employment and live independently is a statement on an issue reserved to the Commissioner—that is it "would direct our determination or decision that you are or are not disabled," and therefore, it is "inherently neither valuable nor persuasive." (Tr. 19). 20 C.F.R. §§

404.1520b(c)(3), 416.920b(c)(3). The ALJ articulated why she believed Dr. Schwartz's opinion was not persuasive, and she discussed specific evidence that undermined the persuasiveness of the opinion. Cf. Monroe, 826 F.3d at 188. Thus, the ALJ's decision adequately explains how she considered the supportability and consistency factors when finding Dr. Schwartz's opinion was not persuasive.

Relying on Rhonda E.C. v. Comm'r of Soc. Sec., No. 2:21-cv-94, 2022 WL 1040408 (E.D. Va. Mar. 16, 2022), Plaintiff argues that the ALJ's unfavorable assessment of Dr. Schwartz's opinion depended on her normal cardiovascular and pulmonary function during physical examinations, and this was error. (Doc. No. 11 at 7–8). In Rhonda E.C., however, the court determined that "[t]he ALJ mostly neglected to review the extensive objective medical evidence" and "address other objective medical evidence [that was] consistent with and of consequence to assessing" the opinion of Plaintiff's treating cardiologist. Id. at *12. Here, by contrast, the ALJ conducted a lengthy discussion where she evaluated the objective medical evidence that was "consistent with and of consequence to assessing" Dr. Schwartz's opinion. When determining whether an ALJ's rationale is sufficient, this Court considers the ALJ's entire decision on review. See Bramblett v. Colvin, 2:14-CV-00011-RLV, 2016 WL 1249297, at **5–6 (W.D.N.C. Mar. 30, 2016) (finding that an ALJ's prior discussion of the medical evidence provides valuable insight regarding how he evaluated the medical opinions); see also McCartney v. Apfel, 28 F. App'x 277, 279 (4th Cir. 2002) (agreeing with the district court that "the ALJ need only review medical evidence once in [the] decision."). Therefore, the ALJ properly evaluated the persuasiveness of Dr. Schwartz's opinion in determining Plaintiff could perform a range of light work with additional functional limitations, and substantial evidence supports the ALJ's evaluation.

### 2. The ALJ's evaluation of Dr. Shahan's opinion.

In considering the limiting effects of Plaintiff's mental impairments, the ALJ evaluated evidence related to Plaintiff's ability to concentrate, persist, and maintain pace. Plaintiff had an initial psychiatric evaluation with Cynthia Shahan, M.D. in February 2019. Dr. Shahan indicated that Plaintiff presented as fidgety, endorsed auditory hallucinations, and exhibited an anxious mood and affect. (Tr. 19, 757). Dr. Shahan observed, however, that Plaintiff's attitude was cooperative, her speech was normal, her thought processes were logical, and her insight and judgment were age appropriate. (Id.). Given Plaintiff's presentation, Dr. Shahan diagnosed her with an unspecified mood disorder and unspecified anxiety disorder, and she prescribed medications to Plaintiff. (Id.). While Plaintiff denied any improvement in her mood the following month, she admitted that she was no longer experiencing hallucinations. (Tr. 19, 762). When Plaintiff presented for an appointment in April 2019, Dr. Shahan noted that Plaintiff exhibited abnormal attention and concentration. (Tr. 15, 71, 761). During the same appointment, however, Dr. Shahan also indicated that Plaintiff's memory remained within normal limits, she was not exhibiting abnormal thoughts, and her judgment and insight were within normal limits. (Tr. 15, 17, 761).

Plaintiff reported some symptom exacerbation in subsequent months and appeared with abnormal appearance, mood, thought process, attention, and concentration. By August 2019, however, despite some persistent difficulty with motivation, routine, and task completion, a sad mood, tearful affect, and her report of seeing "shadows," both Plaintiff and her father admitted that her symptoms had improved. Dr. Shahan noted that Plaintiff presented with normal appearance and speech, intact attention, and concentration, and she was oriented. (Tr. 15, 20, 760–61, 765). And as the ALJ explained, in addition to findings from Plaintiff's treating

psychiatrist, other providers, including her neurologist, Neil G. Patel, M.D. typically indicated that she exhibited normal memory, which supported no more than moderate limitations in her ability to understand, remember or apply information, and concentrate, persist, or maintain pace. (Tr. 15, 461, 797, 801).

In assessing Plaintiff's mental limitations, the ALJ also considered her reports of activities. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The ALJ discussed Plaintiff's alleged difficulty remembering things and her father's statement that she had gotten lost while driving on several occasions. (Tr. 15, 69). As the ALJ noted, Plaintiff stated that she needed reminders to take her medications and tend to her personal care, and her father testified that he needed to remind her to take her medication and assisted her with filling her pill organizer. (Tr. 14–15, 17, 68, 324). The ALJ also observed that Plaintiff and her father testified that she had difficulty sleeping due to anxiety and problems concentrating and staying on task. However, Plaintiff's father testified that she uses the internet on her phone and watches television. (Tr. 15, 68). Additionally, Plaintiff stated in her function report that she was able to pay attention and enjoyed knitting and watching television. (Tr. 15, 17, 326–27). Significantly, she specifically admitted that she was able to pay attention to a two-hour movie and could focus for two hours. (Tr. 17, 60).

Regarding her ability to interact with others, Plaintiff testified that she has social anxiety, and she reported she sometimes has difficulty being around others. (Tr. 15, 60, 327). Her father testified that he has observed her becoming increasingly angry and agitated since 2017, which necessitated taking her to the emergency department on two occasions following outbursts. (Tr. 15, 65–66). However, during these visits, she presented as calm, cooperative, maintained good eye contact, and exhibited appropriate behavior and affect, as well as normal mood, speech, and

thought content. (Tr. 15, 598, 606). Although the staff at the hospital urged Plaintiff's father to seek outpatient treatment for her in October 2018, four months later, in February 2019, he still had not done so. (Tr. 15, 598, 606).

Despite Plaintiff's reports of social anxiety and Dr. Shahan's observation that she sometimes presented with a sad mood and affect, Plaintiff regularly exhibited cooperative behavior during her visits with Dr. Shahan. (Tr. 15, 757, 762, 774). And other medical providers consistently noted that Plaintiff presented as cooperative, with a normal mood and affect. (Tr. 15, 469, 477, 490, 821, 902, 906). Moreover, Plaintiff admitted that, despite her alleged difficulty being around others, she goes out with friends, attends church, gets along with everyone, and even has a boyfriend whom she attends social functions with. (Tr. 15, 326, 801). Based on evidence from her providers and Plaintiff's own reports, the ALJ appropriately determined that Plaintiff could occasionally interact with coworkers, supervisors, and the public. (Tr. 16).

Both Plaintiff and her father indicated that she had trouble adapting or managing herself. (Tr. 15–16). Plaintiff stated that she does not adapt well to stress or changes in her routine, and her father testified that she had to move back home because she did not clean her house or wear clean clothes. (Tr. 16, 65, 328). But no providers noted that they observed Plaintiff to have poor hygiene or dress, and they documented that she displayed normal judgment and insight. (Tr. 16, 461, 804, 918, 927). In fact, Dr. Shahan consistently indicated that Plaintiff exhibited normal judgment, (Tr. 16, 757, 761–62, 767-68), and other providers noted that she displayed a normal affect, (Tr. 19, 477, 485, 906). Even when Plaintiff reported experiencing occasional suicidal ideations to her primary care provider in January 2018 and appeared tearful with a flat affect, she remained cooperative and displayed normal speech and thought content. (Tr. 19, 474–75). Despite her reports that she had difficulty managing herself, Plaintiff admitted that she was able

to independently drive, complete tasks such as cleaning her room and the bathroom, and she socialized with friends and attended large events. (Tr. 16, 324, 326, 795). Therefore, the ALJ properly determined that she could adapt to routine and simple changes in the work environment. (Tr. 16).

In December 2020, Dr. Shahan opined that although Plaintiff was able to maintain regular, punctual work attendance and ask simple questions, she would be unable to perform any other mental work functions, her work would need to be checked for errors, she would require a reduced pace with extra breaks, she would be off task at least 15 percent of the workday, and would miss more than one day of work per month. (Tr. 20, 1075). The ALJ determined that this opinion was not persuasive and explained that it was "not supported" by the psychiatrist's own treatment notes and it was "inconsistent" with the notes and observations of other providers. (Tr. 20, 469, 477, 485, 490, 598, 606, 762, 765, 767, 821, 801, 804). As discussed, the ALJ acknowledged that during some psychiatric visits, Plaintiff presented with a sad mood, tearful affect, abnormal appearance, thought process, attention, and concentration, and reported some persistent difficulty with motivation, routine, task completion, and seeing "shadows." But as the ALJ explained, some of Dr. Shahan's treatment notes also showed that, despite her mental impairments and symptoms, Plaintiff exhibited normal memory, there was no evidence of abnormal thoughts, she had logical thought processes, her insight and judgment were age appropriate, and she had intact attention and concentration. (Tr. 15, 20, 757, 761, 774).

Furthermore, the ALJ identified assessments from other medical providers indicating that Plaintiff had normal mental status examinations, which showed she was consistently cooperative, displayed a normal mood and affect, and had normal thought content, which was inconsistent with Dr. Shahan's opinion. (Tr. 469, 477, 485, 490, 598, 606, 821, 892, 906). Plaintiff argues

-14-

Case 3:21-cv-00680-MOC   Document 17   Filed 08/31/22   Page 14 of 18

that the ALJ did not cite specific "subjective findings" from Dr. Shahan's records, such as Plaintiff outbursts, social difficulty, lack of motivation, and difficulty with sleep. (Pl. Br. 14–15). But as discussed, the ALJ considered this evidence and summarized these findings in her RFC assessment. Nevertheless, the Fourth Circuit does not require the ALJ to address every piece of evidence in Social Security cases. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014).

Plaintiff urges the Court to adopt findings from a case in the Eastern District of Virginia that an "ALJ erred because he did not explain why a psychologist could not rely on a claimant's subjective complaints to support his opinion and because the claimant's subjective complaints support the psychologist's opinion." (Doc. No. 11 at 15–16). Angel L.H. v. Comm'r of Soc. Sec., No. 4:20-cv-120, 2021 WL 6750796 (E.D. Va. Dec. 21, 2021).[2] But the court's finding is not applicable here. As the ALJ explained here, Dr. Shahan's own treatment notes did not support the extent of the limitations she assessed, her opinion was inconsistent with those of other providers, and Plaintiff's own statements, including that she could pay attention for up to two hours, supported the ALJ's RFC limitations. While Plaintiff disagrees with the ALJ's assessment and conclusion, she fails to identify any material evidence, conflicts, or specific functions related to her ability to work the ALJ's analysis did not address. See Funderburk v. Saul, 3:20-CV-00334-FDW, 2021 WL 1721871, at *4 (W.D.N.C. Apr. 30, 2021) (distinguishing Arakas v. Comm'r of Soc. Sec., 983 F.3d 83, 100 (4th Cir. 2020)); see also Walker v. Saul, 2021 WL 342570, at *10 (S.D.W.V. Jan. 6, 2021) (distinguishing Arakas where the plaintiff failed to

---

[2] In this Circuit, it is well established that an ALJ "may . . . discount medical opinions for excessive reliance on a claimant's subjective statements." Thompson v. Berryhill, No. 4:18-CV-133-FL, 2019 WL 2980030, at *6 (E.D.N.C. Apr. 22, 2019) (citing Mastro v. Apfel, 270 F.3d 171, 178) (4th Cir. 2001)), report and recommendation adopted sub nom. Thompson v. Saul, No. 4:18-CV-133-FL, 2019 WL 2932736 (E.D.N.C. July 8, 2019).

identify any material conflicting evidence or misstatement of the evidence, but rather invites the court to reweigh the evidence because he disagrees with the ALJ's decision) report and recommendation adopted, 2021 WL 329308. In contrast, the ALJ's decision shows that she thoroughly evaluated Plaintiff's ability to perform the functions outlined in 20 C.F.R. §§ 404.1545(b), 416.1545(b). The ALJ properly considered the opinion evidence, among other evidence, in her evaluation of Plaintiff's RFC. And, as she did in assessing the persuasive value of Dr. Schwartz's opinion, the ALJ articulated why she believed Dr. Shahan's opinion was not persuasive and explained how she considered the factors of supportability and consistency, as required by the regulations. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Therefore, substantial evidence supports the ALJ's assessment of Dr. Shahan's opinion.

**3. The ALJ's evaluation of Dr. McNulty's opinion.**

In May 2019, consultative examiner Walter McNulty, Ph.D. examined Plaintiff for a consultative psychological examination and determined that she would require more trials than most adults to understand, retain and follow instructions, would likely require more supervision than most adults, and she may exhibit behavior problems indicating that she has difficulty controlling her behavior when she is angry. (Tr. 20, 785). The ALJ concluded that Dr. McNulty's opinion was not persuasive and explained that the consultative examiner's findings did not support his opinion and the opinion was inconsistent with other evidence in the record. (Tr. 20). For instance, while Dr. McNulty determined that Plaintiff would require more trials to understand, retain, and follow instructions than most adults and observed that her thought process was rambling, disjointed, and vague, (Tr. 20, 784–85), Dr. McNulty acknowledged that Plaintiff's memory, attention, and concentration were only mildly impaired, she exhibited appropriate thought content, her speech was clear and understandable, and she was fully oriented

to person, place, time, personal information, and current events. (Tr. 14-15, 784–85). Dr. McNulty added that Plaintiff was alert and aware of her surroundings and understood the purpose for the evaluation. (Tr. 784). Additionally, during the examination, Plaintiff reported that she had a valid driver's license, enjoyed crossword puzzles, and, despite having an IEP in high school, was able to graduate and subsequently earn an associate degree in early childhood studies with average grades. (Tr. 14–15, 781, 783). Moreover, Dr. McNulty stated that he found the information Plaintiff provided was generally reliable. (Tr. 781).

Dr. McNulty's assessment that Plaintiff may exhibit behavior problems is also unsupported by his examination of Plaintiff and is inconsistent with other evidence in the record. (Tr. 20, 785). Dr. McNulty's statement that Plaintiff may exhibit behavior problems does not impose any functional limitations on her ability to perform work activity. And contrary to Plaintiff's argument, the ALJ explained in the decision that during the consultative examination, Dr. McNulty indicated that Plaintiff presented as cooperative, her behavior was within normal limits, and she exhibited an appropriate affect, which contradicts the consultative examiner's statement. (Tr. 15, 781, 784). Plaintiff also reported engaging in social activities such as attending church, and she stated that she had a few friends that she sees. (Tr. 783). In fact, according to Plaintiff, on the day before her examination, she had family over for a cookout. (Tr. 784). Moreover, as discussed, Plaintiff was consistently cooperative during her medical examinations.

Plaintiff contends that the ALJ erred because she did not specifically discuss Plaintiff's performance during immediate recall testing where she missed one out of five words for immediate recall on two trials. (Doc. No. 11 at 11). She states that the ALJ's "omission [was] significant because [her] diminished recall memory supports Dr. McNulty's opinion" that she

-17-

would need more trials to understand, retain, and follow instructions than most adults. (Id.). But Plaintiff fails to acknowledge that Dr. McNulty determined that her memory, attention, and concentration were only mildly impaired. (Tr. 785). Moreover, there is no requirement for the ALJ to address every piece of evidence in Social Security cases. See Reid, 769 F.3d at 865. In sum, the ALJ properly determined that Dr. McNulty's opinion was not persuasive.

## VI. Conclusion

The Court has carefully reviewed the decision of the ALJ, the transcript of the proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 10) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 13) is **GRANTED;** and

(4) This action is **DISMISSED.**

Signed: August 31, 2022



Max O. Cogburn Jr
United States District Judge

-18-

Case 3:21-cv-00680-MOC   Document 17   Filed 08/31/22   Page 18 of 18